COMMONWEALTH *vs.* JAMES C. CORCORAN, JR.

Hampden.    December 7, 1964. — February 3, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Larceny. Pleading, Criminal,* Indictment, Bill of particulars.

A conviction of an attorney for the heirs of a decedent for larceny under
G. L. c. 266, § 30, of money of the heirs by false pretences or embezzle-
ment was warranted by evidence that, after one of the heirs, acting for
the others, had received a check from a purchaser of real estate of the
decedent pursuant to an oral agreement of sale, the defendant obtained
an indorsement of the check to himself upon stating to the payee that
he would use some of the amount of the check to discharge a mortgage
on the real estate and would deposit the balance to the credit of the
estate, and that he did not do so but instead used the proceeds of the
check for his own purposes; the heirs had a sufficient interest in the
money to support the conviction even if the purchaser of the real estate
could have avoided the oral agreement of sale and recovered the money.
[438–440]

In a criminal case where the indictment charged that the defendant stole
certain money and a bill of particulars specified "Larceny as set forth
. . . [in G. L. c. 266, § 30] and more particularly embezzlement" and
"Larceny as defined in . . . [§ 30] while acting as Attorney," and the
proof at the trial was all relevant to an embezzlement through mis-
appropriation by the defendant of the proceeds of a check held in trust
by him but also showed that he obtained title to the check by a false
pretence, there was no error in an instruction to the jury that he could
be found guilty of larceny by false pretence or by embezzlement.
[438, 440, 442]

INDICTMENT found and returned on May 20, 1963.

The case was tried in the Superior Court before
*Macaulay, J.*

*Daniel M. Keyes, Jr., & William K. Danaher, Jr.,* for the
defendant, submitted a brief.

*Matthew J. Ryan, Jr.,* District Attorney, for the Com-
monwealth.

Commonwealth *v.* Corcoran.

WHITTEMORE, J. The defendant, in May, 1963, was indicted for larceny under G. L. c. 266, § 30,[1] in the form made sufficient by G. L. c. 277, § 79. The recital was that on June 30, 1962, he "did steal certain money . . . of the value of over One Hundred Dollars, the property of . . . [five named persons]" who, as it later appeared, were the heirs of Albert Rheault. A bill of particulars subsequently specified: "1. [Nature and character of the crime.] Larceny as set forth under Chapter 266, Sec. 30 and more particularly embezzlement. 2. [Manner and means.] Larceny as defined in Chapter 266, Sec. 30 . . . while acting as Attorney for the heirs of the estate of Albert Rheault. 3. [Subject matter.] Property as set forth in para. 2 of Chapter 266, Sec. 30 and more specifically, money and/or monies. 4. [Time.] On or about July 2, 1962 . . . ." Upon the filing of the bill of particulars, on motion of the Commonwealth, the indictment was amended to substitute the date July 2, 1962.

1. There was no error in the denial of the motion for a directed verdict. The jury could have found the facts next stated.

In March, 1962, at the defendant's office, Donald Rheault, acting for the other heirs, received a check for $11,900, payable to him, from the purchaser, under an oral agreement, of real estate of the deceased, Albert Rheault. This was the balance of the agreed price of $12,000. No deed was then delivered. The purchaser knew of a large outstanding mortgage and the defendant told her he would act for her also and get her a deed after discharging the mortgage. The defendant told Donald that if he would indorse the check to the defendant, he would deposit it the next day, saving Donald a trip to the bank, and would use the check to discharge the mortgage and would deposit the balance to the credit of the estate. The defendant did not do these

---

[1] "(1) Whoever steals, or with intent to defraud obtains by a false pretence, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, . . . shall be guilty of larceny . . . ."

things. He used the check to purchase a large bank check, and five small bank checks, totaling $11,121. He received the balance in cash. Later he used the large bank check to purchase another, somewhat smaller bank check, taking the balance in cash. Several times thereafter he effected transactions similar to the first two. On July 2, 1962, he purchased one check of $4,374.40. Counsel stipulated that the small checks, successively obtained, were used by the defendant for his personal ends and in no way to benefit the estate.[2] Eventually, the defendant told Donald that he had spent the money and he signed a writing absolving Donald from the "mishandling" of the funds. He told a police lieutenant that he spent this money in payment of his own obligations. The defendant did not testify or present evidence.

The jury could have found that the defendant obtained title to the check by the false pretense that he intended to do what he said he would do. Alternatively, the subsequent embezzlement of the funds, held in trust for the estate, was of course indisputable if the uncontroverted evidence was believed.

There is nothing in the contention that the money belonged to the purchaser of the real estate. The defendant contends that, as there was no writing, the purchaser could have avoided the oral agreement and recovered the money. Even if this had been so, which we need not decide, the title to the check had passed to Donald to hold for the heirs, and by Donald's indorsement, to the defendant. General Laws c. 278, § 9, provides: "In the prosecution of crimes which relate to or affect real or personal estate, it shall be sufficient, and shall not be a variance, if it is proved on the trial that, at the time when the crime was committed, either the actual or constructive possession or the general or special property in the whole or any part of such real or

---

[2] This stipulation did not apply to a bank check for $7,898.22, dated November 30, 1962, payable to the insurance company which held the mortgage and bearing the notation, "From Est. of Albert Rheault."

personal estate was in the person or community alleged to be the owner thereof.''

2.   There was no error in the charge given in accordance with the law stated in point 1 above, nor in denying the requests of the defendant to the contrary effect.

3.   The defendant objected to the judge's charge that the Commonwealth could prove its case by showing any type of larceny and could find the defendant guilty of larceny by false pretence or by embezzlement. The assignments of error contend that the specification of embezzlement limited the Commonwealth to proof of that wrong.

General Laws c. 277, § 41, provides: ''In an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretences.''

In *Commonwealth* v. *King,* 202 Mass. 379, 387–389, this court said: ''The effect of this statute . . . is to put it beyond a doubt that the former crimes of larceny, embezzlement, and the obtaining of property by false pretences, are now merged into the one crime of larceny . . . . [T]he crime of larceny . . . may be proved by evidence which would have warranted a conviction upon any one of the three charges that formerly would have been needed. . . . This legislation was intended to do away with the possibility of a criminal indicted for one of the three crimes mentioned escaping punishment by reason of its being afterwards found that his crime was technically one of the other two . . . . [See *Commonwealth* v. *O'Malley,* 97 Mass. 584, wherein the defendant] was . . . enabled wholly to escape punishment. It was the object . . . to prevent . . . similar scandals . . . by doing away with the merely technical difference between three cognate and similar offenses. . . . [Hence the jury may] consider whether . . . [the] facts show a taking . . . by trespass from the possession of . . . [the] owner, a fraudulent conversion . . . while properly in the possession of the wrongdoer, or an obtaining . . . by

criminal false pretenses . . . . [The Commonwealth may not be required] to elect in such a case [for this] would be to continue to afford an opportunity to frustrate the ends of justice."

The defendant cites *Commonwealth* v. *Althause,* 207 Mass. 32, 34–35, 45–46, in support of his contention that the Commonwealth may, nevertheless, restrict the scope of the indictment and has done so here. In that case the specifications recited in detail what the defendant did with a bond receipt. The court held that the judge was in error in ruling that the recital amounted to the setting out of the crime of larceny by false pretences so that the Commonwealth was restricted to proof of that type of larceny. The court said that the specifications were a mere recital of facts "without any color being added to them by way of a conclusion of law." The court also observed that if the bill had confined the Commonwealth to proving larceny through false pretences the defendant would in that case have been entitled to a verdict of not guilty.

The "primary purpose [of a bill of particulars] is to describe in more detail that which is included in the allegations of an indictment in order that the defendant may be fully informed of the nature of the charge and be enabled to prepare an adequate defence." *Commonwealth* v. *Ries,* 337 Mass. 565, 580–581, and cases cited. *Commonwealth* v. *Iannello,* 344 Mass. 723, 726 ("reasonable knowledge of the nature and character of the crime"). The specifications did not serve their primary purpose; they added nothing of substance to the factual information supplied by the indictment. The order to specify plainly did not require the Commonwealth to specify what legal aspect of the single crime of larceny would be shown by the facts that would be proved. Having unnecessarily inserted an uncalled for conclusion of law, the Commonwealth should have moved to delete it. G. L. c. 277, § 40. In view of the evidence such a motion should have been allowed, *Commonwealth* v. *Green,* 302 Mass. 547, 553–554, and there would have been no occasion for a postponement of trial. No prejudice would have

resulted had the specifications been amended after the evidence had been closed.

Specifications restrict the Commonwealth "as to the scope of the indictment and to the proof to be offered in support of it." *Commonwealth* v. *Iannello,* 344 Mass. 723, 726. But in view of the statute merging three offences in the "one crime of larceny," *Commonwealth* v. *King,* 202 Mass. at 388, we hold that if there was a restriction by the reference to embezzlement it was no more than a limitation in respect of the proof that could be offered. The proof that was offered was all relevant to the proof of embezzlement. As this proof was also adequate to support the charge of obtaining title by a false pretence, there was no error in the instructions. Substantively, the defendant's wrong was the larceny of $11,900 in a series of misapplications that began in March, 1962, with the defendant's representation that, taking the money, he would faithfully apply it. If this was a false representation, it was nevertheless a part of the single wrong of the larceny of the money.

The defendant makes no express contention in respect of the specification of time and requested no instruction below The effect of the amended indictment, read with the specifications, was to limit the Commonwealth to proof of the crime within a period "on or about July 2, 1962." See *Commonwealth* v. *American News Co. Inc.* 333 Mass. 74, 77. July 2, 1962, was the date by which, as the evidence showed, the greater part of $11,900, the property of the heirs of Albert Rheault, had been misapplied. The money had come into the possession of the defendant in March, and the false pretence that was inferable from the evidence occurred then. The meaning of "on or about" is imprecise. Time, not of the essence of the crime, need not be alleged in the indictment. G. L. c. 277, § 20. In the circumstances, the defendant not contending that the period "on or about July 2, 1962," does not encompass the period of the events that began in March, there is no occasion for us to rule.

*Judgment affirmed.*